# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# DELTA DIVISION

THOMAS M. HENDLEY                                                                              PLAINTIFF
Reg #54647-019

V.                              No. 2:20-CV-00044-BSM-JTR

ROBERT WEAVER, Factory Manager,
FCI-Forrest City Low, *et al.*                                                            DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If you do not file objections, Judge Miller can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I. Introduction

Plaintiff Thomas M. Hendley ("Hendley"), a federal prisoner, initiated this *Bivens*[1] action asserting claims that arose while he was working for Federal Prison

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

Industries, Inc. ("UNICOR")[2] in the Federal Correctional Complex, Low Security Prison in Forrest City, Arkansas ("FCC-FC Low").[3] *Doc. 7*.

After screening his Complaint, Hendley was allowed to proceed with his *Bivens* claims against Defendants Boris Hunt ("Hunt"), Robert Weaver ("Weaver"), and Michael Milholland ("Milholland") (collectively "Defendants"), in their individual capacities. According to Hendley, the Defendants wrongfully terminated him from his UNICOR job in retaliation for engaging in protected conduct, in violation of the First Amendment. He also alleges that the Defendants' decision to terminate him from his UNICOR job was racially motivated and violated his Fifth Amendment equal protection rights.[4] *Docs. 10, 11 & 19*.

Defendants have filed a Motion for Judgment on the Pleadings, or, in the Alternative, Motion for Summary Judgment (*Doc. 31*), along with a Statement of

---

[2] UNICOR is the commercial or "trade" name of Federal Prison Industries, Inc., a "government corporation organizationally within the Bureau of Prisons whose mission is to provide work simulation programs and training opportunities for inmates" in federal correctional facilities. 28 C.F.R. § 345.11

[3] Hendley is now incarcerated in the Federal Medical Center in Fort Worth, Texas (*Doc. 20*), serving a 156-month sentence after being convicted of child pornography offenses (*Doc. 32-4*).

[4] The Fifth Amendment does not contain an explicit equal protection clause, like the one found in the Fourteenth Amendment. Nevertheless, it is "settled that the concept of due process of law prohibits the federal government from discriminating against any person on such irrelevant and invidious grounds as race, color, religion, or national origin." *Johnson v. Alexander*, 572 F.2d 1219, 1220 (8th Cir. 1978) (citing *Washington v. Davis*, 426 U.S. 229 (1976)). The Eighth Circuit refers to this as the "equal protection component of the Fifth Amendment due process clause," *Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 952 (8th Cir. 2004) or the federal prisoner's "equal protection rights." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815–16 (8th Cir. 2008).

2

Undisputed Facts (*Doc. 32*), and Brief in Support (*Doc. 33*). Defendants argue that they are entitled to judgment on the pleadings because, under *Bivens*, Hendley cannot assert an actionable First Amendment retaliation claim or a viable Fifth Amendment discrimination claim which are predicated on being terminated from a prison work assignment. *Doc. 31 at 1*.

Alternatively, Defendants contend that, even if there exists such an implied action under *Bivens*, the undisputed facts establish that they are entitled to summary judgment on the merits of Hendley's claims. *Id. at 2*. To support their Statement of Undisputed Facts, Defendants have attached: (1) sworn Declarations from Hunt, Weaver, and Milholland; (2) the public information inmate data for Hendley; (3) the Federal Bureau of Prisons' Program Statement on Work Programs for Inmates; (4) Hendley's inmate work history records; (5) Hendley's work performance evaluation records; (6) and copies of the UNICOR "Action Reports" Hendley was issued on September 19, 2017, September 13, 2018, and January 18, 2019. *Docs. 32-1 through 32-10*.

Despite being granted an extension of time to respond to Defendants' Motion for Judgment on the Pleadings or, Alternatively, Motion for Summary Judgment, Hendley did not file a Response or a Statement of Disputed Facts, and his time for doing so has long since passed. *Doc. 36*. Accordingly, all facts set forth in

3

Defendants' Statement of Undisputed Facts are now deemed admitted. Local Rule 56.1(c).

Even if this Court assumes Hendley may pursue a *Bivens* action for his First Amendment retaliation and Fifth Amendment discrimination claims, Defendants are entitled to judgment as a matter of law.[5] For the reasons stated below, Defendants' Motion for Summary Judgment should be granted.

## II. Discussion

### A. Defendants' Motion for Summary Judgment

After Defendants filed their Motion for Summary Judgment, the Court entered an Order advising Hendley of his right to file a Response to the Motion. *Doc. 34*. This Order explicitly advised Hendley of the consequence of failing to submit a "Statement of Disputed Facts":

---

[5] Under the Court's recent framework for analyzing proposed *Bivens* claims, Hendley would likely be precluded from seeking a remedy under *Bivens*. *See Egbert v. Boule,* --- U.S. ---, 142 S. Ct. 1793, 1809 (2022) ("[I]f [the Court] were called to decide Bivens today, [it] would decline to discover any implied causes of action in the Constitution."); *Ziglar v. Abbasi,* --- U.S. ---, 137 S.Ct. 1843, 1857 (2017) ("[E]xpanding the Bivens remedy is now a 'disfavored' judicial activity.") (citation omitted). *See also Stinson v. Schmidt*, 2:20-cv-00187-BSM-JTK, 2020 WL 6880166 at *2 (E.D. Ark. Nov. 3, 2020) (concluding that federal prisoner's First Amendment retaliation claim alleging that prison officials punished him for filing a lawsuit against them failed to state a claim under *Bivens*), *report and recommendation adopted*, 2020 WL 6878088 (E.D. Ark. Nov. 23, 2020); *Alexander v. Oritz*, 807 F. App'x 198 (3rd Cir. 2020) (In addressing a federal inmate's Fifth Amendment racial discrimination claim, holding that "the prison workplace context is a special factor precluding extending the *Bivens* remedy.").

However, for the sake of judicial efficiency, this Court assumes, *without deciding*, that Hendley may proceed under *Bivens*. *See Hernandez v. Mesa*, --- U.S. ---, 137 S. Ct. 2003, 2007 (2017) ("[D]isposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy…is appropriate in many cases.").

4

> [P]ursuant to Local Rule 56.1, Plaintiff must file a separate "short and concise statement of material facts as to which he contends a genuine issue exists to be tried." Plaintiff's "Statement of Disputed Facts" must state whether he "agrees" or "disagrees" with the factual statements in *each* of the numbered paragraphs in Defendants' Statement of Undisputed Facts (*Doc. 32*). **If Plaintiff disagrees with any of the facts in Defendants' Statement of Undisputed Facts, he must: (1) identify each numbered paragraph that contains the facts he disputes; (2) for each paragraph, explain why he disputes those facts; and (3) include a citation to the evidence he is relying on to support his version of the disputed fact.**

*Doc. 34 at 1–2*.

On December 27, 2021, Hendley filed a Motion for Extension of Time to file his Response. *Doc. 35*. The Court granted this Motion and extended the deadline for him to file his Response through January 21, 2022. *Doc. 36*. Hendley did not file a Response to the Motion or a Statement of Disputed Facts. Accordingly, the following facts in Defendants' Statement of Undisputed Facts (*Doc. 32*) are now deemed to be admitted:[6]

---

[6] Local Rule 56.1 provides the following:

> In addition to the requirements set forth in Local Rule 7.2, the following requirements shall apply in the case of motions for summary judgment.
> (a) Any party moving for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, shall annex to the notice of motion a separate, short and concise statement of the material facts as to which it contends there is no genuine dispute to be tried.
> (b) If the non-moving party opposes the motion, it shall file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine dispute exists to be tried.
> (c) All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) *shall be deemed admitted unless controverted by the statement filed by the non-moving party* under paragraph (b). (Emphasis added).

5

1.  "Federal Prison Industries, Inc. (FPI [or UNICOR]) was established as a program to provide meaningful work for inmates. This work is designed to allow inmates the opportunity to acquire the knowledge, skills, and work habits which will be useful when released from the institution." *See Doc. 32-1*, Weaver Decl. ¶ 4; *Doc. 32-5*, Program Statement 8120.03(1).

2.  Each inmate assigned to UNICOR is required to comply with all work standards pertaining to his assignment. The Inmate Worker Standards include minimum standards of Personal Conduct, Punctuality, and Productivity. Some of the minimum standards of personal conduct include: "Work without causing friction with other inmate workers, and cooperate fully with peers" and "Obey and cooperate fully with the work supervisor . . . by successfully completing assigned tasks in the manner prescribed." Some of the minimum standards for Punctuality and Productivity include: "Report to the assigned work or training area promptly when coming to work at the beginning of a shift, after meal(s), or after breaks"; "Remain at work during the time designated by the local work schedule"; "Use work time efficiently and keep nonproductive time to a minimum during hours of FPI factory operation"; "Demonstrate an ability to adapt to changing work conditions to meet the goals of the FPI factory (including job reassignments)." *Doc. 32-1*, ¶ 5; *Doc. 32-5*, at 20-21.

3. The Superintendent of Industries may remove an inmate from FPI work status for a serious violation, or repeated less serious violations, of the Inmate Worker Standards. *Doc. 32-1*, ¶ 6.

4. The responsibilities of Superintendent of Industries (SOI) at FCC Forrest City are delegated to Defendant Weaver as Factory Manager. *Id.*

5. Hendley was assigned to a prison work assignment at the FCC-FC Low UNICOR factory from October 11, 2016 until he was terminated on February 8, 2019. *Doc. 32-1*, ¶ 7; *Doc. 32-6*, Hendley's Inmate Work History.

6. In May and June of 2018, the FCC-FC Low UNICOR factory underwent a transition, and several positions were eliminated, including Hendley's position. *See Doc. 32-2,* Hunt Decl., ¶ 6.

7. The inmates whose prison work assignments had been eliminated, including Hendley, were instructed to take the initiative in finding new positions or they would be re-assigned by their foreman. *Id.* ¶ 7.

8. Defendant Hunt, who was at that time the Quality Assurance Manager, *see id.* ¶ 1, encouraged and allowed Hendley to cross-train for a part-time position as a quality inspector during the transition period. *Id.* ¶ 7.

9. Shortly after Hendley was trained as a quality instructor, a number of additional inmates were hired for both full and part-time positions in the factory. *Id.*

¶ 8. Hendley was not offered one of these positions because he was not the best candidate for the position. *Id.* ¶ 9.

10. In October 2018, Woodshop Foreman Michael Milholland offered Hendley a job working at the Woodshop in the FCC Forrest City Low UNICOR factory. *See id.* ¶ 10; *Doc. 32-3*, Milholland Decl., ¶ 5.

11. In February 2019, Hendley was terminated from UNICOR after receiving his third Action Report for violating Inmate Worker Standards. *Doc. 32-1*, ¶ 14.

12. UNICOR workers have two performance evaluations per year. For the periods of July–December 2016, January–June 2017, and July–December 2017, Hendley's overall performance was rated as Good. In his last performance evaluation, January–June 2018, his overall performance was rated as Satisfactory, but in two categories his performance was rated as Poor: Punctuality/Productivity and Compliance with Work Standards. *Id.* ¶ 8; *Doc. 32-7*, Hendley's Work Performance Evaluation Records.

13. During inmate Hendley's time at the FCC-FC Low UNICOR factory, he also received several verbal warnings and three Action Reports, including two written warnings for performance and behavior. *Doc. 32-1*, ¶ 9; *Docs. 32-8, 32-9, & 32-10*, Action Reports.

14. UNICOR staff, including the Factory Manager, had numerous conversations with Hendley about his poor attitude and the fact that he was argumentative with both inmates and staff. Despite these verbal conversations, Hendley's performance problems identified in his Work Performance Evaluation Report continued. *Doc. 32-1*, ¶ 10; *Doc. 32-3*, ¶ 10.

15. On September 19, 2017, Hendley received an Action Report issuing a Written Warning after he failed to report back to his work assignment after going to the commissary. *Doc. 32-1*, ¶ 11; *Doc. 32-8*.

16. On September 13, 2018, Hendley received an Action Report and a second Written Warning for working an evening shift without receiving his supervisor's permission and being in the factory without authorization. *Doc. 32-1*, ¶ 12; *Doc. 32-9*.

17. On January 18, 2019, the Woodshop Foreman, Michael Milholland, wrote Hendley an Action Report and gave it to Factory Manager Weaver. *Doc. 32-1*, ¶ 14; *Doc. 32-3*, ¶ 8; *Doc. 32-10*. This was Hendley's third Action Report.

18. The Action Report noted that Hendley had been found idle at his work station and when asked to resume working he refused, claiming he could not work without an assistant. He was instructed that his assistant had worked alone the day before and Hendley should just do what he could do by himself. Hendley continued

to refuse to work. The Action Report recommended that Hendley be removed from UNICOR. *Doc. 32-1*, ¶ 13; *Doc. 32-10*; *see also Doc. 32-3*, ¶ 8.

19. When Foreman Milholland ordered Hendley to return to work and just do what he was able to do himself, Hendley still refused, hopping up on a table and crossing his arms. *Doc. 32-3*, ¶ 8. The day before, Hendley had taken the day off without notice and his inmate coworker had had no problem working by himself all day. *Id.*

20. On February 8, 2019, Factory Manager Weaver terminated Hendley from his UNICOR based on his refusal to do his job on January 18th and his disciplinary record. *Doc. 32-1*, ¶ 14.

21. When Hendley was terminated, Factory Manager Weaver encouraged him to take advantage of the Administrative Remedy process if he thought he was terminated unjustly. *Id.* ¶ 15.

22. Boris Hunt had no involvement in Hendley's termination. He did not become Operations Manager until March 2019, the month after Hendley was terminated. *Id.* ¶ 18; *see also Doc. 32-2*, ¶ 11.

23. Hendley is Caucasian, as is Factory Manager Weaver. At no time did Hendley's race, charges, or administrative remedy history play any role in his treatment. *See 32-1*, ¶ 16; *Doc. 32-2*, ¶ 9; *Doc. 32-3*, ¶ 11.

24. Throughout his time at UNICOR, Hendley was encouraged to use the Administrative Remedy process to voice any concerns, as that is the proper channel for addressing grievances in the Federal Bureau of Prisons. *Doc. 32-1*, ¶ 15; *Doc. 32-2*, ¶ 12.

25. UNICOR treats all inmate workers equally and uses a progressive discipline process. *Doc. 32-1*, ¶ 17.

*26.* Hendley's termination was based on his misconduct and past disciplinary record. *Id.*

*27.* Likewise, Hendley was not selected for a full-time position in July 2018 because he was not the right candidate for the positions. *Doc. 32-2*, ¶¶ 8-9.

*28.* When these positions came available in July 2018, Hendley had already received two Action Reports for violating Inmate Worker Standards and he had just received a performance evaluation rating his Conduct and Punctuality/Productivity as Poor. *Doc. 32-1*, ¶¶ 5, 8, 11–12, 20; *see also* Work Evaluation Records, *Doc. 32-7*; Action Reports, *Docs. 32-8, 32-9 & 32-10*.

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). An assertion that a fact cannot be disputed, or is genuinely disputed, must be supported by materials in the record such as "depositions, documents, electronically

stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c(1)(A).

Based on the now undisputed facts contained in Defendants' Statement of Undisputed Facts, retaliation was *not* a motivating factor for any of the adverse UNICOR employment actions that Hendley seeks to challenge. *See Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007) (providing necessary elements to succeed on § 1983 retaliation claim). Hendley has also failed to identify any affirmative evidence from which a jury could find proof of race discrimination by Defendants. *See id.* (providing that, to avoid summary judgment on an equal protection race discrimination claim, under § 1983, the plaintiff "must identify affirmative evidence from which a jury could find proof of the pertinent motive, race discrimination") (internal quotations, alteration and citation omitted).

Accordingly, based on the undisputed facts, the Court should grant Defendants' Motion for Summary Judgment on all of Hendley's claims.

### III. Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    Defendants' Motion for Judgment on the Pleadings or, Alternatively, Motion for Summary Judgment (*Doc. 31*) be GRANTED, in part, and DENIED, in part.

2. Defendants' Motion for Summary Judgment be GRANTED, and Hendley's Complaint be DISMISSED, WITH PREJUDICE.

3. Defendants' Motion for Judgment on the Pleadings be DENIED, as moot.

DATED this 14th day of July, 2022.

_____
UNITED STATES MAGISTRATE JUDGE